IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

EVRAZ STRATCOR, INC.                                                                              PLAINTIFF

v.                                          Case No. 6:15-cv-6019

KENNAMETAL, INC.                                                                                 DEFENDANT

## MEMORANDUM OPINION

Before the Court is Plaintiff Evraz Stratcor, Inc.'s Motion for Partial Summary Judgment. (ECF No. 68). Defendant Kennametal, Inc. filed a response. (ECF No. 76). Plaintiff filed a reply. (ECF No. 80). The Court finds the matter ripe for consideration.

### I. BACKGROUND

This is a breach of contract case. Plaintiff is an Arkansas company that sells vanadium products, including Vanadium Aluminum ("VAl"), to customers in the titanium industry. Defendant is a Pennsylvania company that, among other things, provides the service of converting raw materials into VAl.[1] Plaintiff and Defendant are parties to an Amended and Restated Conversion Agreement (the "Agreement"), which was executed on July 29, 2013,[2] as well as a Representation Agreement.

Under the Agreement, Defendant is required to convert up to four million pounds of VAl per year for Plaintiff at a plant in New Castle, Pennsylvania (the "Conversion Facility").

---

[1] VAl is a metal alloy that is primarily comprised of two raw materials: aluminum and vanadium oxide. (ECF No. 68-1).

[2] In 2001, Plaintiff originally entered into a conversion agreement with International Specialty Alloys Inc. ("ISA"). This original agreement was amended a number of times between 2001 and 2013. In 2008, ISA merged into Defendant, and Defendant assumed ISA's obligations under the agreement. The current Agreement was the result of negotiations between the parties and their counsel in 2011.

Defendant is obligated to maintain and operate the Conversion Facility so that it is capable of converting raw materials into VAl. Defendant must also use its best efforts to keep the Conversion Facility's lease in full force and effect during the term of the Agreement.

Plaintiff is required to pay Defendant a contractually established fee in exchange for Defendant's VAl conversion services. Plaintiff is obligated to supply Defendant with the raw materials needed for Plaintiff's VAl requirements, and to maintain those raw materials at the Conversion Facility.[3] Plaintiff is also obligated to provide Defendant with all of the vanadium oxide required for Defendant's production of its own, unrelated alloys.[4]

Defendant is prohibited from converting VAl on behalf of any entity other than Plaintiff during the Agreement's duration and for three years after the Agreement's termination. Likewise, Plaintiff is prohibited from using any VAl conversion service other than Defendant's during the Agreement's duration. Plaintiff holds the exclusive right to market and sell the VAl converted by Defendant.

In August 2014, Defendant sent Plaintiff a letter contending that Plaintiff was in material breach of the Agreement. In January 2015, Defendant filed an arbitration demand.[5] In July 2016, Plaintiff filed an amended complaint, seeking a declaratory judgment that it did not breach the Agreement—and thus Defendant cannot terminate the Agreement without first providing three years' notice to Plaintiff—and asserting two breach-of-contract claims. Defendant filed a counterclaim seeking a declaratory judgment that Plaintiff breached the Agreement—thus

---

[3] At least ten days before the beginning of each month, Plaintiff must provide Defendant with written notice of its projected requirements for VAl conversion in the ensuing month.

[4] If Plaintiff is unable to supply Defendant with sufficient amounts of vanadium oxide to make Defendant's own alloys, Defendant may purchase the necessary materials from a third party.

[5] On March 8, 2016, the Court denied Defendant's motion to dismiss this case because Plaintiff's claims fell within the scope of the parties' arbitration agreement. (ECF No. 42). To the contrary, the Court found that the Agreement's language indicated that the parties did not intend to arbitrate the claims in this case.

allowing Defendant to immediately terminate the Agreement with no prior notice to Plaintiff—as well as asserting a separate breach-of-contract counterclaim.

On January 6, 2017, Plaintiff filed the instant motion, arguing that it is entitled to summary judgment on its and Defendants' claims seeking declaratory judgment as to whether Plaintiff breached the Agreement. Plaintiff also seeks partial summary judgment on Defendant's breach-of-contract counterclaim, with the exception of paragraph thirty-seven of Defendant's counterclaim.[6]

## II. STANDARD

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material

---

[6] Paragraph thirty-seven of Defendant's counterclaim asserts that "[Plaintiff] has failed to provide raw materials for [Defendant] that comply with the specifications and requirements of the Conversion Agreement." (ECF No. 46).

fact and that it is entitled to judgment as a matter of law. *See Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

### III. DISCUSSION

Plaintiff argues that it is entitled to summary judgment on its and Defendants' declaratory-judgment claims, as well as partial summary judgment on Defendant's breach-of-contract counterclaim. However, as a preliminary matter, the Court must first address the law which governs the Agreement.

**A. Choice of Law**

The Court agrees with the parties that the Agreement should be governed by Pennsylvania law. Federal district courts sitting in diversity, like the Court in this case, must apply the forum state's substantive law, including its conflict-of-law rules. *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007). Therefore, the Court will utilize Arkansas's choice-of-law rule. "Arkansas courts will honor [a contractual] choice of law provision, 'provided that the law selected is reasonably related to the transaction and does not violate a fundamental public policy of the state.'" *Id.* (quoting Ark. Civ. Prac. & Proc. § 6:7).

The Agreement states that it "shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." (ECF No. 68-1). Defendant is a Pennsylvania corporation that converts VAl in Pennsylvania for Plaintiff. Thus, the Court finds that Pennsylvania law bears a reasonable relationship to the parties' contractual arrangement. *See*

*Nursing Home Consultants, Inc. v. Quantum Health Servs., Inc.*, 926 F. Supp. 835, 841 (E.D. Ark. 1996), *aff'd*, 112 F.3d 513 (8th Cir. 1997) (applying Pennsylvania law to a contract dispute between an Arkansas corporation and a Pennsylvania corporation in light of the parties' choice-of-law provision). Neither party argues that a public policy of the State of Arkansas would override the parties' choice of law. Accordingly, the Court will apply Pennsylvania substantive law in interpreting the Agreement.

### B. Plaintiff and the Agreement

Plaintiff's amended complaint seeks, *inter alia*, a declaratory judgment that it did not breach the Agreement. Defendant's first counterclaim seeks a mirrored declaratory judgment that Plaintiff did breach the Agreement. Defendant also asserts a breach-of-contract counterclaim that essentially tracks the allegations in Defendant's declaratory-judgment counterclaim.

Defendant's declaratory-judgment counterclaim asserts that Plaintiff breached or otherwise failed to carry out its duties under the Agreement in good faith in, *inter alia*, the following ways:

> a) [Plaintiff] is failing to use its best efforts to provide orders for VAl to [Defendant], it is purposefully limiting its sales of VAl, and it is providing [Defendant] with far fewer orders for VAl than is necessary for [Defendant] to operate the Conversion Facility;
>
> b) [Plaintiff] has failed to provide sufficient raw materials for [Defendant] to meet VAl customer requirements for orders that have been provided to [Defendant];
>
> c) After [Defendant] attempted to discuss its concerns with [Plaintiff], [Plaintiff] stopped providing [Defendant] with information about future

        customer requirements for VAl and is currently refusing to provide that information to [Defendant].[7]

(ECF No. 46).

In support of the instant motion, Plaintiff states that the Agreement contains no requirement that Plaintiff must seek or obtain a particular number of VAl orders, and likewise contains no requirement that Plaintiff must provide sufficient raw materials to Defendant to meet the requirements of Plaintiff's customers. Plaintiff also states that the Agreement contains no requirement that it must share information with Defendant about the future requirements of Plaintiff's customers. Plaintiff argues that Pennsylvania law requires courts to enforce the plain, unambiguous language of a sophisticated contract entered into by commercial entities, and to not imply additional obligations into the contract. Plaintiff concludes that Defendant's counterclaims fail as a matter of law because the Agreement's plain language does not impose any of the above obligations onto Plaintiff.

Defendant's response brief states that it is not claiming that Plaintiff is in direct breach of any express contractual provision. Instead, Defendant argues that Plaintiff violated the duty of good faith and fair dealing, which Pennsylvania courts imply onto every party to every contract. Defendant states that this implied duty, coupled with the doctrine of necessary implication,[8] requires the Court to imply onto Plaintiff the duty to use its best efforts to provide the necessary raw materials to Defendant and to make sales of VAl, or else the parties' contractual intent—that Defendant will produce VAl, that Plaintiff will sell it, and that both parties will benefit—will be

---

[7] Defendant also alleges that Plaintiff breached the Agreement by failing to provide Defendant with raw materials that comply with certain specifications and requirements in the Agreement. However, this allegation is not at issue in the instant motion.

[8] The doctrine of necessary implication provides that, absent an express provision, "the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the [contract's] purpose . . . and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *John B. Conomos, Inc. v. Sun Co. (R&M)*, 831 A.2d 696, 706 (Pa. Super. Ct. 2003).

frustrated.[9] Defendant also argues that Plaintiff's breaches are so serious that they go to the heart of the contract and have irreparably damaged the trust between the parties, justifying immediate termination of the Agreement under Pennsylvania law.

Plaintiff's reply brief argues that, under Pennsylvania law, the covenant of good faith and fair dealing attaches to existing contractual obligations, but cannot add new contractual duties. Plaintiff argues that this, coupled with Defendant's admission that Plaintiff has not directly breached any express provision of the Agreement, entitles Plaintiff to summary judgment on this issue.

The Court must first look to Pennsylvania contract law for guidance. Then the Court will address each of the obligations Defendant seeks to imply onto Plaintiff.

### 1. Pennsylvania Contract Law

Pennsylvania law[10] provides that the parties' intent is a paramount consideration in the interpretation of any contract. *Robert F. Felte, Inc. v. White*, 302 A.2d 347, 351 (Pa. 1973). "The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous." *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986). Contracting parties have "the right to make their own contract and it is not the function of [courts] to rewrite it, or give it a construction in conflict with the accepted and plain meaning of the language used." *Felte*, 302 A.2d at 351 (internal alterations omitted). To this end, "[t]he stated policy of [the Pennsylvania] Supreme Court is to enforce clear contract language." *Gustine Uniontown Assocs., Ltd. ex rel. Gustine Uniontown, Inc. v. Anthony Crane Rental, Inc.*,

---

[9] The Court notes that, other than providing citations for general statements of law regarding the duty of good faith and fair dealing, Defendants provided no analogous authority demonstrating that it is appropriate for the Court to imply the duty of good faith in the ways Defendant requests.

[10] A successful breach-of-contract claim under Pennsylvania law requires a showing of: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. Ct. 2005).

7

892 A.2d 830, 840 (Pa. Super. Ct. 2006). The principle of freedom of contract requires courts to refrain from imposing unwritten contractual obligations on parties if the contract does not establish that the parties intended to be bound by those obligations. *Hutchinson*, 519 A.2d at 388. The sophistication of the contracting parties is also a consideration. *See John B. Conomos, Inc.*, 831 A.2d at 708 ("Absent fraud or unconscionability, courts should not set aside terms on which sophisticated parties agreed.").

In addition, Pennsylvania courts have accepted the principle that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."[11] *Kaplan v. Cablevision of PA, Inc.*, 671 A.2d 716, 722 (Pa. Super. Ct. 1996). However, "[t]he implied covenant of good faith and fair dealing attaches to existing contractual obligations; it does not add new contractual duties." *Hanaway*, 132 A.3d at 471.

### 2. Plaintiff's VAl Orders

Defendant alleges that Plaintiff breached the duty of good faith and fair dealing by failing to use its best efforts to provide VAl conversion orders to Defendant. Defendant also alleges that Plaintiff is purposefully limiting its sales of VAl, and thus Defendant is not receiving enough VAl conversion orders to cover the expenses of running the Conversion Facility. Plaintiff argues that the Agreement contains no minimum-order requirement, and that the Court should not imply one because the Agreement's language indicates that the parties did not intend to be bound by such an obligation.

---

[11] "Good faith" is defined as "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party," as well as "honesty in fact in the conduct or transaction concerned." *Hanaway v. Parkesburg Grp., LP*, 132 A.3d 461, 472 (Pa. Super. Ct. 2015). Conversely, examples of bad faith include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance. *Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992).

Pennsylvania law provides that courts must not imply a different contract than that which the parties have expressly adopted. *Hutchinson*, 519 A.2d at 388. If parties could have expressly included a specific clause in their contract, but did not do so, the absence of said clause precludes courts from extending the parties' agreement by implying the clause into the contract. *See, e.g.*, *Setlock v. Pinebrook Pers. Care & Ret. Ctr.*, 56 A.3d 904, 912 (Pa. Super. Ct. 2012).

Plaintiff argues that the Agreement does not require Plaintiff to use its "best efforts" to provide a minimum number of VAl conversion orders to Defendant, or to provide enough orders to allow the Conversion Facility to be profitable. Defendant argues that it only converts VAl for Plaintiff, and thus it is dependent on Plaintiff to sell VAl. Defendant argues that reason and justice require the Court to find that Plaintiff must use its best efforts to make VAl sales, otherwise the parties' intent will be frustrated.

The Agreement provides, in relevant part, that Defendant shall "convert the Vanadium Oxide and Aluminum supplied by [Plaintiff] to up to 4,000,000 pounds annually of VAl." (ECF No. 68-1). The Agreement also requires that Plaintiff use Defendant's services to produce all of its VAl requirements. The Agreement contains no provision requiring Plaintiff to use its "best efforts" to place a certain number of VAl orders or in making VAl sales.

The Court notes that the Agreement does contain "best efforts" language, but this language does not relate to VAl orders or sales. Instead, the Agreement requires Defendant to use its best efforts to keep the Conversion Facility's lease in effect during the Agreement's duration. The Court finds that the explicit use of a best-efforts clause elsewhere in the Agreement, combined with the absence of such a clause regarding VAl orders or sales, is indicative that the parties did not intend to be bound by such a clause with respect to VAl orders or sales. The parties could have included a best-efforts clause in connection with VAl orders or

sales, but they did not. Moreover, the fact that the parties included a maximum VAl order limit indicates to the Court that the parties considered their obligations regarding VAl production and did not see fit to include a minimum-order guarantee.[12]

For these reasons, the Court is unpersuaded by Defendant's arguments. If the Court were to find that the duty of good faith and fair dealing requires Plaintiff to use "best efforts" to make VAl sales or to provide a minimum number of VAl orders, the Court would essentially rewrite the parties' unambiguous Agreement. The Court's reading of the Agreement shows that the parties could have included a minimum-order or best-efforts clause with respect to VAl orders or sales, but they did not do so. Thus, Plaintiff is legally obligated to place all of its VAl orders with Defendant, but is not obligated to place a minimum number of VAl orders. The Court cannot find that Plaintiff breached the duty of good faith by not placing enough VAl orders for Defendant's Conversion Facility to remain profitable. The Court will not disturb Pennsylvania's well-established principle of freedom of contract by expanding the Agreement beyond that which the parties—two sophisticated business entities that engaged in arms-length negotiations— explicitly agreed to. *See Peoples Mortg. Co. v. Fed. Nat. Mortg. Ass'n*, 856 F. Supp. 910, 927 (E.D. Pa. 1994) ("Pennsylvania contract law . . . is not in place to act as an insurance policy for those who suffer some sort of loss as a result of . . . contractual relations. The freedom to contract includes the freedom to enter into bad deals.") (internal alterations omitted).

Accordingly, the Court finds that summary judgment should be granted on this issue as to Plaintiff's declaratory-judgment claim. For the same reasons, Defendant's declaratory-judgment and breach-of-contract counterclaims are dismissed to the extent that they allege Plaintiff breached the Agreement by failing to use its best efforts to provide VAl orders to Defendant.

---

[12] The deposition transcript of John VanKirk, then Defendant's Vice President for Aerospace and Defense, shows that the parties did, in fact, discuss a minimum-order requirement when they were negotiating the Agreement, but that it was ultimately not included in the Agreement. (ECF No. 65-32).

### 3. Sufficient Raw Materials

Defendant alleges that Plaintiff breached the duty of good faith and fair dealing by failing "to provide sufficient raw materials for [Defendant] to meet VAl customer requirements for orders that have been provided to [Defendant]." (ECF No. 48). Plaintiff argues that because Defendant conceded that Plaintiff has not directly breached any provision of the Agreement, then Defendant's claim that Plaintiff breached the duty of good faith and fair dealing must fail. The Court agrees with Plaintiff.

Although Pennsylvania law imposes the duty of good faith and fair dealing onto all parties to a contract, there must be some relationship to the provisions of the contract to invoke the duty of good faith. *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 170 (3d Cir. 2013) (citing *Kaplan*, 671 A.2d at 722). "In other words, the duty of good faith and fair dealing does not license courts to interpose contractual terms to which the parties never assented." *Id.*

The Agreement, in relevant part, states that "[Plaintiff] shall supply . . . 100% of the Vanadium Oxide and 100% of the Aluminum devoted to [Defendant's] conversion of the alloys." (ECF No. 68-1). The Agreement also states that "[Plaintiff] shall ship to the Conversion Facility . . . and maintain inventories of Vanadium Oxide and Aluminum . . . from which [Defendant] may from time to time withdraw . . . Vanadium Oxide and Aluminum for conversion of VAl." (ECF No. 68-1). The Agreement contains no other provisions relating to Plaintiff supplying Defendant with raw materials for VAl conversion.

At first glance, it appears as if Defendant is alleging that Plaintiff breached the express provision of the Agreement requiring Plaintiff to ship and maintain inventories of the raw

materials for Defendant to withdraw and convert to VAl.[13] However, this does not appear to be the case, as Defendant's brief unequivocally states that it "is not attempting to claim that [Plaintiff] is in breach of any express contractual provision." (ECF No. 76).

Plaintiff focuses on Defendant's use of the words "customer requirements" in the counterclaim, and argues that "[n]othing in the Agreement allows [Defendant] to insist on receiving sufficient raw materials to fulfill purported requirements or orders of [Plaintiff's] customers, as opposed to orders from [Plaintiff] itself." (ECF No. 69). The Court agrees with Plaintiff. The Agreement only requires that Plaintiff provide all of the raw materials for Defendant to use in VAl conversion, and that Plaintiff maintain inventory at the Conversion Facility from which Defendant may withdraw for use in VAl conversion when Plaintiff places a VAl order. The Agreement makes no mention of Plaintiff's customers or their specific requirements.

Another possibility is that Defendant is arguing, much like in the above section, that the duty of good faith and fair dealing should be used to require Plaintiff to maintain a specific, minimum amount of raw materials at the Conversion Facility at all times. Assuming *arguendo* that this is Defendant's argument, the Court rejects this argument for the same reasons discussed above, specifically that the parties had the opportunity to include a minimum-raw-materials clause in the Agreement and did not do so.

Based on the language used in Defendant's counterclaim, and based on Defendant's statement that it does not allege that Plaintiff directly violated any express provision in the Agreement, the Court finds that Defendant asks the Court to imply a duty of good faith that is

---

[13] If Defendant was alleging this, it would certainly implicate provision 2(c) of the Agreement. Implied in this provision is the requirement that Plaintiff must maintain enough raw materials for Defendant to be able to fulfill a VAl order when Plaintiff places one.

12

external to the Agreement, and the Court will not do so. *W. Run Student Hous. Assocs., LLC*, 712 F.3d at 170; *Kaplan*, 671 A.2d at 771-72.

Accordingly, the Court finds that summary judgment should be granted on this issue as to Plaintiff's declaratory-judgment claim. For the same reasons, Defendant's declaratory-judgment and breach-of-contract counterclaims are dismissed to the extent that they allege Plaintiff breached the Agreement by failing to provide Defendant with sufficient raw materials to meet future customer requirements.

### 4. Specific Information about Customer Orders

Defendant alleges that Plaintiff breached the duty of good faith and fair dealing by ceasing its practice of providing Defendant with information about future customer requirements for VAI and by refusing to provide that information.[14] Plaintiff argues that because Defendant conceded that Plaintiff has not directly breached any provision of the Agreement, then Defendant's claim that Plaintiff breached the duty of good faith and fair dealing must fail. The Court agrees with Plaintiff.

Although Pennsylvania law imposes the duty of good faith and fair dealing onto all parties to a contract, there must be some relationship to the provisions of the contract to invoke the duty of good faith. *W. Run Student Hous. Assocs., LLC*, 712 F.3d at 170 (citing *Kaplan*, 671 A.2d at 722). "In other words, the duty of good faith and fair dealing does not license courts to interpose contractual terms to which the parties never assented." *Id.*

---

[14] Defendant also argues that Plaintiff stopping its practice of sharing specific, future customer requirement information is serious and goes directly to the heart of the contract. Thus, Defendant argues that Plaintiff has irreparably damaged the parties' trust, which justifies immediate termination of the Agreement under Pennsylvania law. It is true that Pennsylvania allows immediate termination of a contract when a party breaches in a way that goes directly to the essence of the contract and irreparably damages the parties' trust. *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 652 (Pa. 2009). However, for the reasons discussed in this section, the Court finds that this is not a material breach that justifies immediate termination of the Agreement.

The Agreement, in relevant part, requires that, "[a]t least 10 days before the beginning of each calendar month, [Plaintiff] shall provide [Defendant] with written notice of its projected requirements for conversion of VAl during the ensuring month." (ECF No. 68-1). The Agreement also provides that, if Plaintiff wishes, the parties may meet once a year to discuss "business outlook and forward-looking objectives as it relates to the operation of the Conversion Facility, and the supply and conversion of VAl." (ECF No. 68-1).

The parties do not make entirely clear what customer-order information Plaintiff previously gave to Defendant that is not being exchanged now.[15] As best as the Court can tell, Plaintiff previously gave Defendant the contractually required notice of its projected VAl requirements, as well as other specific information regarding VAl order forecasting. At some point after the parties' dispute began, Plaintiff apparently stopped providing Defendant with the additional, specific information.

The Agreement contains no information-sharing provision other than the clause stating that Plaintiff must give Defendant notice of its monthly VAl requirement projections. The Agreement provides that the parties may meet annually and discuss business forecasting, but only if Plaintiff calls for such a meeting. Plaintiff is not required to request the annual meeting, and the fact that Plaintiff did so in the past does not obligate it to do so continually. Defendant admits in its brief that it does not allege that Plaintiff has breached any express provision in the Agreement. Instead, Defendant asks the Court to imply a duty of good faith that is external to

---

[15] Defendant points the Court to pages 70-72 of the deposition transcript of John VanKirk, attached by Plaintiff as an exhibit to the instant motion. (68-9). This excerpted exhibit does not include pages 70-72 of the deposition transcript. However, the correct pages are found in an exhibit attached by Defendant in support of its own motion for partial summary judgment. (ECF No. 65-32). Defendant's representative testified that the parties' annual business-outlook meetings were no longer taking place as they did in the past, resulting in Defendant not receiving additional VAl order forecasting information.

the Agreement, and the Court will not do so. *W. Run Student Hous. Assocs., LLC*, 712 F.3d at 170; *Kaplan*, 671 A.2d at 771-72.

Accordingly, the Court finds that summary judgment should be granted on this issue as to Plaintiff's declaratory-judgment claim. For the same reasons, Defendant's declaratory-judgment and breach-of-contract counterclaims are dismissed to the extent that they allege Plaintiff breached the Agreement by failing to provide Defendant with information about future customer requirements for VAI.

### IV. CONCLUSION

For the reasons discussed above, the Court finds that that Plaintiff's Motion for Partial Summary Judgment (ECF No. 68) should be and hereby is **GRANTED**. Accordingly, Defendant's declaratory-judgment counterclaim and breach-of-contract counterclaim are **DISMISSED** to the extent that they allege that Plaintiff breached the Agreement by failing to use its best efforts to provide VAl orders, failing to provide sufficient raw materials for Defendant to meet VAl customer requirements, and failing to provide Defendant with specific information about future customer requirements. Plaintiff's two breach-of-contract claims remain in this action, along with Defendant's breach-of-contract counterclaim alleging that Plaintiff's supplied raw materials failed to comply with the Agreement's specifications.

**IT IS SO ORDERED**, this 24th day of March, 2017.

/s/ Susan O. Hickey  
Susan O. Hickey  
United States District Judge